## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN  DIVISION

**NORTHLAND CASUALTY COMPANY**                                    **PLAINTIFFS**

**VS.**                                  **CASE NO.  4:06CV00731 JMM**

**ROCKY HARRELL D/B/A ROCKY HARRELL**
**FARMS, ET AL.**                                                 **DEFENDANT**

### ORDER

Plaintiff, Northland Casualty Company ("Northland") filed a complaint seeking a

declaratory judgment establishing that it has no obligation to defend or pay claims on behalf of

Rocky Harrell D/B/A Rocky Harrell Farms ("Harrell") in connection with an action filed in

Pulaski Circuit Court by Barbara Meeks, individually and as Sepcial Administratrix of the Estate

of Floyd Meeks, deceased and his heirs at law.  Jurisdiction is based on diversity of citizenship.

Plaintiff has filed a Motion for Summary Judgment to which defendants have responded.

For the reasons stated below the Motion for Summary Judgment will be granted.

Summary judgment is appropriate when there is no genuine issue of material fact and the

dispute may be decided solely on legal grounds.  *Iowa Coal Min. Co. v. Monroe County*, 257 F.3d

846, 852 (8th Cir. 2001);  Fed. R. Civ. P. 56.  The initial inquiry is whether there are genuine factual

issues that can be properly resolved only by a finder of fact because they may reasonably be

resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Plaintiff as the moving party as the burden to show that the record does not disclose a genuine

dispute on a material fact.   *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399 (8th

Cir.1995).

1

I. *The Underlying Cause of Action*

On October 4, 2002, Floyd Meeks was fatally injured in a one vehicle accident while transporting agricultural products for Harrell.  Harrell had contracted with Meeks during the latter part of July, 2002 to transport products on "as needed" basis during the upcoming harvest season. Harrell would direct Meeks at the beginning of each week how many loads of soy beans Meeks was to pick up and deliver.  This practice averaged two loads per week.  Meeks had some discretion as to when he loads were picked up and delivered so long as it was within the designated week.  Meeks  was hauling exclusively for Harrell during the relevant time period and Harrell did not have the option of hiring other drivers in his stead to make the deliveries.  The tractor used by Meeks was owned by Harrell and the trailer was leased by Harrell.  All licenses and insurance on the vehicles were obtained by Harrell. Both Harrell and Meeks had the right to terminate their employment relationship at any time.

As a result of the fatal accident Meeks' estate and heirs have sued Harrell for negligence for money damages under the Arkansas Wrongful Death Act.

II. *The Insurance Policy*

Northland issued a policy of insurance to Harrell providing business auto coverage with the effective dates of March 7, 2002 to March 7, 2003.  The Policy contains the following exclusions and definitions:

**SECTION II - LIABILITY COVERAGE**

**B.  Exclusions**

This insurance does not apply to any of the following:

4.  **Employee Indemnification and Employer's Liability**

"Body injury" to:

a.  An "employee" of the "insured" arising out of and in the course of:
(1) Employment by the "insured'" or
(2) Performing the duties related to the conduct of the "insured's" business;" or

b.  The spouse, child, parent, brother or sister of the "employee as a consequence of   Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract".  For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

. . .

**SECTION V - DEFINITIONS**

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

. . .

**F.** "Employee" includes a "leased worker".  "Employee" does not include a "temporary worker".

. . .

3

**I.**  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  "Leased worker" does not include a "temporary worker".

. . .

**O.**  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

III.  *Opinion of the Court*

The coverage issues raised in this action are governed by Arkansas law.  Where, as here, jurisdiction is based upon diversity of citizenship the choice of law rules of the forum control.  Under Arkansas law a insurance contract is governed by the law of the state where it has the most significant relationship.  *See Crisler v. Unum Ins. Co. of Am.,* 366 Ark. 130, --- S.W.3d ----, 2006 WL 1118936  (2006) *citing Ducharme v. Ducharme*, 316 Ark. 482, 872 S.W.2d 392 (1994).  Here the contract was made in Arkansas, delivered in Arkansas, and was the subject matter of the contract.  Thus Arkansas law applies.

Plaintiff contends that, by the terms of the policy, that Meeks was an employee of Harrell at the time of the accident and that claims made on his behalf would be excluded.  Defendants have raised three points in opposition to this assertion by plaintiff.

First, defendant claims that the Court lacks subject matter jurisdiction to determine if an employer-employee relationship existed and that the matter is solely within the jurisdiction of the Arkansas Workers' Compensation Commission.

The cases cited by defendants on this issue involve whether the Arkansas Workers' Compensation Act applies to a particular situation where benefits are being claimed under that Act. The issue before this Court is the interpretation of an insurance policy and jurisdiction is based upon diversity. The cases cited by defendants are easily distinguished and the Court finds expressly that it has subject matter jurisdiction to resolve this dispute.

Defendants second point is that there is a material dispute of fact as to whether an employer-employee relationship existed between Harrell and Meeks. The Court is obligated to look to Arkansas law on this issue and both sides cite to the same factors enumerated by the Arkansas Supreme Court and the Arkansas Court of Appeals. *See Draper v. Conagra Food, Inc.*, 92 Ark. App. 220, 212 S.W.3d 61 (2005); *Arkansas Transit Home, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000).

The factors are (1) the extent of control which, by the agreement, the master may exercise over the details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the work is a part of the regular business of the employer; (9) whether or not the parties believe they are creating the relation of master and servant; and (10) whether the principal is or is not in business. *Id.*

5

The Court must analyze the facts surrounding the employment relationship within the framework of these factors considering the totality of the circumstances with no individual factor necessarily entitled to any greater weight than the others.

A.  *The extent of control that Harrell exercised over Meeks.*

Harrell was in complete control of his operations.  He retained the right to hire and fire all drivers.  He told the drivers what loads to pick up and within a specific time frame when they needed to be delivered.  He specified the location where the vehicle was to be refueled and he advised drivers on proper handling of loads.

B.  *Whether Meeks was engaged in a distinct occupation or business.*

The Court has seen no evidence that Meeks had formed any business entity or held himself out to the public for employment as a truck driver.  The evidence is that Meeks had other regular employment and was only driving on a temporary basis during the harvest season.

C.  *The nature of the work and whether it was usually done under the direction of an employer.*

The evidence with respect to this factor favors a finding of an employer-employee relationship.  As to most important tasks, Harrell was directing or supervising Meeks.

D.  *The skill required for driving a truck loaded with agricultural products.*

Skill and experience are necessary for the operation of any large tractor trailer rig but that skill is not unique.  The evidence here favors the employer-employer relationship.

E.  *Who supplies the tools and instrumentation.*

All tools, instrumentalities, and equipment were furnished by Harrell.

6

F.  *The length of time for which the person is employed*.

This factor is not particularly relevant since Meeks was a seasonal employee working only during the harvest season.

G.  *The method of payment used, whether by the time or by the job*.

Meeks was paid by the load but would receive his money even if the customer did not pay Harrell.  As such Harrell assumed the risk of nonpayment and payment to Meeks was more akin to a guaranteed hourly wage.

H.  *Whether driving is a regular part of Harrell's business*.

Delivery of agricultural products is an integral part of the farming operation conducted by Harrell.

I.  *The understanding of the parties*.

The understanding of the parties is not evidenced by the record.

J.  *Whether Harrell was in a recognizable business*.

Harrell did business as Rocky Harrell Farms and, as such, was a recognizable entity.

When all of these factors are considered in light of the record evidence, the Court finds as a matter of law that Meeks was acting as a employee of Harrell at the time of his fatal accident and not an independent contractor.

The Court is also persuaded by the reasoning of the Court of Appeals for the Fifth Circuit in *Consumers County Mut. Ins. Co. v. P.W. Sons Trucking Inc.*, 307 F.3d 362 (5th Cir. 2002).  In that case the District Court relied on 49 C.F.R. § 390.5 in finding that an individual met the

7

statutory definition of employee when driving a commercial vehicle.  The regulation defined an

employee as

> Any individual, other than an employer, who is employed by an
> employer and who is the course of his or her employment directly
> affects commercial motor vehicle safety.  Such term includes a
> driver of a commercial motor vehicle (including an independent
> contractor while in the course of operating a commercial motor
> vehicle) and mechanic, and a freight handler.

49 C.F.R. § 390.5.

Rule 17-1 of the safety rules of the Arkansas State Highway and Transportation

Department extend all regulations of 49 C.F.R. 390.5 to intrastate operations of motor vehicles.

*See* Code Ark. R. 001 00 004 (2007).

The reasoning of the Fifth Circuit in *Consumer* and of the Court of Appeals for the Ninth

Circuit in *Perry v. Harco Nat. Ins. Co.*, 129 F.3d 1072 (9th Cir. 1997) applies to the facts of the

instant case and forms a second basis for finding that Meeks was an employee of Harrell.

Defendants' third point is, that even if Meeks was an employee of Harrell at the time of

the accident, he was a "temporary worker" so that the employee exclusion would not apply.

Both parties are seemingly in agreement that Meeks was acting as a seasonal employee but

plaintiff does not agree with defendants' assertion that Meeks met the definition of a "temporary

employee."  Plaintiff argues that it is undisputed that Meeks was not " person who is furnished –

to substitute for a permanent employee" and therefore does qualify for the exemption.  The Court

agrees.

The Court finds the definition of a temporary employee to be clear and unambiguous.  The

definitions requires that the employee be "furnished to the employer."  Here, Meeks was not

"furnished" by another entity, rather he was hired directly by Harrell.

Black's Law Dictionary has defined "furnish" to mean,"[t]o supply, provide, or equip, for accomplishment of a particular purpose."  Black's Law Dictionary (6th ed 1990).  Webster's Third New International Dictionary defines "furnish" to mean "to provide or supply with what is needed, useful, or desirable; equip."  Webster's Third New Int'l Dictionary of the English Language (15 ed. 1966).

The Court, therefore, finds that the nature of Meeks' employment on October 4, 2002 was such that he was not a "temporary worker" as defined in the Northland policy but rather he was an "employee' and is excluded from coverage.

IV.  *Conclusion*

It is Ordered that plaintiff's Motion for Summary Judgment is granted and declaratory judgment in favor of Northland is entered that there exists no coverage under policy #CT117470 effective March 7, 2002 to March 7, 2003 for claims arising from the fatal injuries to Floyd Meeks on October 4, 2002 as asserted in the complaint filed in Pulaski Circuit Court in *Meeks v. Bridgestone/Firestone North American Tire, LLC et al.*, civil action CV05-9275.

IT IS SO ORDERED THIS   9   day of    August   , 2007.


_____
James M. Moody
United States District Judge

9